Date signed March 03, 2011



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

In                              *

                                *    Case      10-24656-DK

Landmark Atlantic Hess Farm,    *    Chapter   11
LLC,
                                *

                                *

                    Debtor      *

### MEMORANDUM OF DECISION

Before the court are a Motion to Dismiss this chapter 11 case filed by Merrill Cohen[1] ("Cohen") and a Motion to Dismiss or Convert the case filed by the United States Trustee (the "UST"). The Debtor opposes the dismissal of the case and in accordance with

---

[1]Cohen is the Chapter 7 Trustee for the bankruptcy estates of Tally, LLC and Michael Silver. Cohen asserts standing as an interested party to the instant bankruptcy case by virtue of his status as a Defendant in the adversary proceeding, Landmark Atlantic Hess Farm, LLC vs. Cohen, et al, Adversary No. 10-660-DK.

Landmark has challenged Cohen's standing to pursue dismissal of the case. The court finds that the United States Trustee has proven grounds that require the court to dismiss or convert Landmark's case and therefore it is not necessary to decide whether Cohen has independent standing.

Section 1112(b)(3)[2] of the Bankruptcy Code,[3] on February 17, 2011, the court held a hearing upon the Motions to Dismiss.  All parties presented argument in favor of their positions, and introduced evidence in support thereof, including a joint stipulation of facts submitted by the UST and Debtor to which Cohen also stipulated on the record.

## I. Background

The following facts are not in dispute and constitute findings by the court with respect to the instant motions.  Hess Farm Partnership ("Hess Farm") is an entity which owned property located in Monkton, Maryland (the "Property"), and the bankruptcy trustee of Hess Farm (Evan Goldman) is now in possession of the proceeds of the sale of that Property.[4]  Scott Herrick ("Herrick") shares an interest in Hess Farm by virtue of his ownership of an entity known as Tally Ho, LLC, which owns an interest in Hess Farm.  The other individual who held an interest in Hess Farm is Michael Silver, by virtue of his ownership of Tally, LLC which together with Tally Ho,

---

[2] Section 1112(b)(3) provides that unless the movant agrees otherwise or compelling circumstances exist, the court shall commence a hearing upon a motion to dismiss made by a party in interest within 30 days of the filing of the motion and render its decision on the motion no more than 15 days after the commencement of the hearing.

[3] All further references to code sections shall be to the Bankruptcy Code found in Title 11 of the United States Code.

[4] By court Order, the Property was sold free and clear of all liens and encumbrances on December 20, 2010.  The proceeds are approximately $1,800,000.

LLC hold all the equity interests in Hess Farm.  Tally, LLC and Michael Silver are chapter 7 debtors and the trustee of their estates is Cohen.

The original acquisition of the Property was funded by a loan to Hess Farm of approximately $3,080,000, by First Mariner Bank, secured by the Property (the "Hess Farm Purchase Note").  Herrick provided a guaranty of the Hess Farm Purchase Note (the "Hess Farm Guaranty").

The Debtor in the case now before the court, Landmark Atlantic Hess Farms, LLC ("Landmark"), was formed in 2008 as a limited liability company under Maryland law for the purpose of purchasing and owning the Hess Farm Purchase Note which at the time was held by Empire Mortgage X, Inc., Empire having acquired it from First Mariner Bank.  Herrick is Landmark's sole member and owner.

Landmark acquired the Hess Farm Purchase Note from Empire in 2008 and borrowed the purchase price from Virginia Heritage Bank (the "Virginia Heritage Loan").  Landmark pledged the Hess Farm Purchase Note as collateral for the Virginia Heritage Loan[5] and Herrick provided a personal guaranty to Virginia Heritage Bank (the "Virginia Heritage Guaranty").

Landmark was to have no other business than the collection of payments on the Hess Farm Purchase Note and the turnover of those payments to Virginia Heritage Bank.

---

[5] This fact was contained in the Stipulation of Facts. However, at the hearing upon these Motions, counsel for Landmark would not state that the asserted pledge was properly perfected. The court in this opinion makes no finding as to this question.

Hess Farm did not make any payments to Landmark. Instead, Tally, LLC (Silver's entity) as a general partner of Hess Farm, filed an involuntary bankruptcy case against Hess Farm in April 2008, which was ultimately converted to chapter 7. Landmark has an allowed claim of $3,080,000 in the Hess Farm case. Although filed as a secured claim in the Hess Farm case, an adversary proceeding was commenced by Silver and Tally, LLC wherein the court entered an Order on March 31, 2010, subordinating Landmark's claim to general unsecured claims and transfering Landmark's lien to the bankruptcy estate (the "Subordination Order").[6]

Landmark then commenced this chapter 11 case by voluntary petition filed on June 29, 2010. The case was filed on the 90th day[7] after the Subordination Order, and the only asset initially disclosed on Landmark's Schedules was a preference action with respect to the Subordination Order. Subsequently, Landmark amended its Schedules to reflect the Hess Farm Guaranty as an asset.[8] The

---

[6] Several months later, on August 5, 2010, Landmark, along with Herrick and another Herrick entity, none of whom had appeared at the trial on the matter, filed a motion to reopen the adversary proceeding in the Hess Farm case and to vacate the court's Subordination Order. After several days of trial, the court found that grounds did not exist for reconsideration of the Subordination Order. Landmark's appeal of the denial of reconsideration is pending before the United States District Court.

[7] The significance of the 90th day is that as to non-insiders, the look-back period for preferential transfers is 90 days prior to the bankruptcy petition date. 11 U.S.C. § 547(b)(4)(A).

[8] Although Landmark could potentially collect from Herrick on his guaranty of the Hess Farm Purchase Note, such action is unlikely, as Herrick controls Landmark. The UST argues that such

only debts originally scheduled by Landmark were the $3,080,000 owed to Virginia Heritage Bank,[9] and two unsecured debts constituting payments made on the Virginia Heritage Loan, in the amounts of $200,880.62 by an Herrick entity, Landmark Property Development, and $35,680.11 by Herrick, individually.  The Schedules were subsequently amended to include Hess Farm and Cohen/Tally, LLC and Cohen/Silver[10] as creditors.[11]

Landmark commenced its preference action against Cohen as the trustee of the bankruptcy estates of Silver and Tally, LLC and against Hess Farm Partnership on August 31, 2010 (the "Preference Litigation").  Cross motions for summary judgment are pending whereby Landmark asserts, and the Defendants dispute, that given

---

action demonstrates cause for dismissal, as evidence that Landmark is not acting as a fiduciary for its creditors and has no actual intent to reorganize its affairs.

   [9] Virginia Heritage Bank has filed a proof of claim in the Landmark bankruptcy case asserting a secured claim of $3,080,000. To date, Landmark has not objected to the claim, nor otherwise filed any action concerning Virginia Heritage Bank's assertion of secured status.

   [10] Cohen/Tally refers to Merrill Cohen as the trustee of the bankruptcy estate of Tally, LLC, an entity owned by Michael Silver and which was the other general partner along with Tally Ho, LLC (owned by Herrick) of Hess Farm Partnership. Cohen/Silver refers to Merrill Cohen as the trustee of the bankruptcy estate of Michael Silver.

   [11] Landmark has also included as debt on its amended Schedules some unpaid taxes to Baltimore County for the Hess Farm Property.  However, the court finds that Landmark had no direct liability for the Hess Farm taxes.  Hess Farm would be the party liable for the taxes; not Landmark.  Accordingly, the inclusion of the taxes on schedule E was more likely to have been an inaccurate effort to bolster the appearance that there are additional creditors to benefit from a bankruptcy reorganization.

Landmark's subsequent bankruptcy filing, the court's Subordination Order caused a transfer which constituted an avoidable transfer pursuant to Section 547(b).

## II. 11 U.S.C. § 1112

As previously explained by this court in *In re Sydnor*, 431 B.R. 584 (Bankr. D. Md. 2010) (Keir, C.J.), the statutory construction of Section 1112 is fairly complex and may require the court to apply a burden shifting analysis in its determination of a motion brought under this section. A movant bears the initial burden to establish cause for dismissal or conversion. If cause is established, the court must dismiss the case or convert the case to a Chapter 7, whichever is in the best interests of the estate and creditors, or appoint a Chapter 11 trustee if the court instead finds that such appointment is the best interests of creditors and the estate. Cause is not precisely defined in the statute, but Section 1112(b)(4) contains a non-exclusive list of enumerated examples of facts that would constitute cause.[12] Further, courts have determined that "bad faith" is also a basis for dismissal or conversion. Collier on Bankruptcy ¶ 1112.04[4]-[7] (Henry Somers & Alan Resnick, 16th ed. 2009).

Under Section 1112 as it existed after the enactment of

---

[12] Although Section 1112(b)(4) contains the word "and" between subsections (O) and (P), as noted in Collier on Bankruptcy, *infra*, ¶ 1112.04[6], courts have widely held that such use was a scrivener's error and the list should instead read in the disjunctive, utilizing the term "or," rather than "and."

BAPCPA,[13] once a movant established a *prima facie* showing of cause, Section 1112(b)(1) required that the court should not grant relief in the form of dismissal or conversion if the court made a finding that dismissal or conversion would not be in the best interest of creditors and the estate based on specific unusual circumstances. The burden was upon the respondent to prove such unusual circumstances. Such unusual circumstances cannot solely be facts that are common to chapter 11 cases generally. *See Sydnor*, 431 B.R. at 591 (citing Collier*, supra,* at ¶ 1112.05).

Section 1112(b) was clarified by "technical amendments" effective December 22, 2010.[14] Subpart (b)(1) now reads:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). As now stated, upon establishment of cause, the court shall dismiss or convert the case, or appoint a chapter 11 trustee, unless the specific circumstance set forth in

---

[13] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 11 Stat. 23, and effective October 17, 2005 is commonly known as the BAPCPA.

[14] *See* Bankruptcy Technical Corrections Act of 2010, Pub. L. 111-327, 124 Stat. 3557 (Dec. 22, 2010). As a self-described technical amendment, the changes apply to cases pending and thereafter filed. *See Landgraf v. USI Film Products*, 511 U.S. 244, 277, 114 S.Ct. 1483, 1503 (1994) (finding that application of amended statute to pending cases is presumed unless such application would have "retroactive effect").

Subsections (b)(2) or (c) applies.[15]

Section 1112(b)(2) now reads:

> The court may not convert a case under this chapter to a
> case under chapter 7 or dismiss a case under this chapter
> if the court finds and specifically identifies unusual
> circumstances establishing that converting or dismissing
> the case is not in the best interests of creditors and
> the estate, and the debtor or any other party in interest
> establishes that--
> (A) there is a reasonable likelihood that a plan will be
> confirmed within the timeframes established in sections
> 1121(e) and 1129(e) of this title, or if such sections do
> not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case
> include an act or omission of the debtor other than under
> paragraph (4)(A)--
> (i) for which there exists a reasonable justification for
> the act or omission; and
> (ii) that will be cured within a reasonable period of
> time fixed by the court.

11 U.S.C. 1112(b)(2).

The change in statute eliminated the words in Section

1112(b)(1) "absent unusual circumstances specifically identified by

the court that establish that the requested conversion or dismissal

is not in the best interests of creditors and the estate. . ,"

thus, making that defense no longer separately expressed as

available to any action to dismiss or convert. The defense is now

found solely in Section 1112(b)(2) and appears more limited in

application.  The defense of unusual circumstances establishing

that converting or dismissing the case is not in the best interests

of creditors and the estate can only be invoked where the debtor or

---

[15] Section 1112(c) limits conversion to chapter 7 if the
debtor is a farmer or corporation that is not a moneyed,
business, or commercial corporation, without debtor's consent.
It is inapplicable to Landmark.

other party opposing the motion establishes that (a) there is a reasonable likelihood that a plan will be confirmed within the timeframes expressed in Section 1112(b)(2)(A); (b) the grounds for conversion or dismissal include an act or omission other than the cause set forth in Section 1112(b)(4)(A)[16]; and (c) there is a reasonable justification for the act or omission which act or omission will be cured within a reasonable period of time fixed by the court.

In evaluating the existence of cause for dismissal or conversion, the court should remain cognizant of the two recognized policies of chapter 11 reorganization: "'preserving going concerns and maximizing property available to satisfy creditors.'" *Collier, supra,* at ¶ 1102.04[5][a] (quoting *Bank of America Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle Street P'ship*, 526 U.S. 434, 435, 119 S.Ct. 1411, 1413 (1999)).

### III. The Motions to Dismiss

The arguments presented by the UST and Cohen in support of dismissal contain similarities, though the court finds particularly persuasive the position of the UST. The UST presents three main "causes" for dismissal of the case. First, the UST argues that the case should be dismissed under Section 1112(b)(4)(A). Next, the

---

[16] Section 11 U.S.C. § 1112(b)(4)(A) provides: "For purposes of this subsection, the term 'cause' includes--(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

UST raises the issue of Landmark's failure to act as a fiduciary to its creditors.  The UST recognizes that while such an allegation would ordinarily lead to the request for appointment of a chapter 7 or chapter 11 trustee in the case, he believes that dismissal is the proper remedy given the lack of any real purpose to the case. Finally, the UST notes Landmark's failure to timely file its monthly operating reports can constitute cause for conversion or dismissal of a chapter 11 case.

Cohen seeks relief based on Section 1112(b)(4)(A) and further argues that the case should be dismissed for bad faith under the objective futility/subjective bad faith twin prongs set forth in the seminal case of *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989).

## A. 11 U.S.C. § 1112(b)(4)(A)

The first enumerated "cause" for dismissal or conversion listed in the statute is for "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  This clause requires Movants to demonstrate the existence of both components: 1) the "substantial or continuing loss or diminution of the estate" and 2) "the absence of a reasonable likelihood of rehabilitation."[17]

---

[17] *See In re BH S & B Holdings, LLC*, 439 B.R. at 347 ("It is not enough just to show continuing loss to the estate; the moving party must also show the absence of a reasonable likelihood of rehabilitation"); *In re Westgate Properties, Ltd.*, 432 B.R. 720, 723 (Bankr. N.D.Ohio 2010); *In re Citi-Toledo Partners*, 170 B.R.

The first prong of the analysis requires the court to determine whether post-petition, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset values. *See In re Westgate Properties*, 432 B.R. at 723 ("The first half of this equation is often met by showing that the debtor continues to incur losses or maintains a negative cash-flow position after the entry of the order for relief"). The legislative amendments in 2005 set forth in the BAPCPA, added the word "substantial" to the first inquiry. With the addition of the word "substantial," Congress has indicated that a loss need not be continuing. Rather if the loss has been substantial based on the financial circumstances of the debtor, the test may be satisfied.

Landmark's only business activity has been to hold an interest in the Hess Farm Purchase Note and Deed of Trust. There is some caselaw suggesting that where the debtor's only business is as owner of an intangible asset, that it is not an operating company and the court does not need to undertake an analysis of the "loss or diminution prong."[18] However, as here, where there is ample evidence of a continuing loss to the estate, the court need not decide the relevance.

If at its inception Landmark ever had a realistic expectation

---

602, 606 (Bankr. N.D. Ohio 1994) ("Section 1112(b)(1) contemplates a 'two-fold' inquiry into whether there has been a 'continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation.'").

[18] *See In re 3 Ram, Inc.*, 343 B.R. 113,118 fn.14 (Bankr.E.D. Pa. 2006).

of regular income in the form of payments on the Hess Farm Purchase Note, the bankruptcy filing for Hess Farm and the sale of the Property (its only asset) has eliminated the possibility of a regular stream of income.  The evidence presented by the UST demonstrates that Landmark is accruing additional debt post-petition.  Because Landmark receives no income from Hess Farm, it has no funds to make payment on the Virginia Heritage Note.  Herrick, having guaranteed the Virginia Heritage Note, makes, or causes another of his entities to make those monthly payments of $10,000 and then records those payments as accruing debt on Landmark's books.  In addition, Landmark has administrative costs of the bankruptcy estate (attorneys' fees, quarterly trustee fees) which are furthering Landmark's insolvency.

Landmark argues that it will succeed in the Preference Litigation and that the proceeds therefrom will stem these losses, which losses are not going to continue because resolution of the litigation is imminent.  Despite its contention that the accruing administrative expenses are justified "in comparison" to the potential recovery from that Preference Litigation, according to the UST's allegations, Landmark has thus far accrued $70,000 in additional debt since filing the bankruptcy petition and will continue to sustain monthly losses.

Landmark's debt to Virginia Heritage Bank exceeds the total proceeds held from the sale of the Property.  Therefore, if Landmark has pledged a perfected security interest in the Hess Farm Purchase Note and deed of trust to Virginia Heritage Bank, it

appears that the bankruptcy estate of Landmark holds no interest of
value in the Hess Farm Purchase Note and deed of trust even if
Landmark were to prevail on its appeal of the Subordination Order
in the Hess Farm case and in the Preference Litigation to avoid the
transfer of the deed of trust interest to the estate of Hess Farm.
The court finds upon these facts that Landmark is suffering a
substantial and continuing loss.

The second part of the test under Section 1112(b)(4)(A) is the
"absence of a reasonable likelihood of rehabilitation."  Courts
have held that rehabilitation is not synonymous with
reorganization[19] and the determination is not whether a debtor can
confirm a plan, but whether the debtor has sufficient business
prospects.[20]

---

[19] In *In re Westgate Properties*, the court explained:
"[R]ehabilitation does not necessarily denote reorganization,
which could involve liquidation.  Instead, rehabilitation
signifies something more, with it being described as "'to put
back in good condition; re-establish on a firm, sound basis.'"
432 B.R. at 723 (quoting *In re v. Companies,* 274 B.R. 721, 725
(Bankr. N.D. Ohio 2002)).  *See also In re 15375 Memorial Corp.*,
386 B.R. 548, 552 (Bankr. D. Del. 2008).

[20] *See* Collier*, supra*, at ¶ 1112.04[6][a][ii] and cases cited
therein including *Quarles v. United States Trustee,* 194 B.R. 94,
97 (W.D. Va. 1996) (no likelihood of rehabilitation where debtor
was losing money and only hope of reorganization depended
entirely on speculative outcomes in pending litigation); *Johnston
v. Jem Dev. Co. (In re Johnston)*, 149 B.R. 158, 162 (B.A.P. 9th
Cir. 1992) (debtor lacked sufficient income to fund a plan); *In
re Citi-Toledo Partners*, 170 B.R. at 606-07; *In re Continental
Holdings, Inc.*, 170 B.R. 919, 931 (Bankr. N.D. Ohio 1994) (debtor
lacked a reasonable likelihood of rehabilitation where debtor
lacked reasonably certain source of income); *In re Schriock
Const. Inc.*, 167 B.R. 569, 576 (Bankr. D.N.D. 1994); *In re
Hinchliffe*, 164 B.R. 45, 52 (Bankr. E.D. Pa. 1994); *In re Great
Am. Pyramid Joint Venture*, 144 B.R. 780, 790 (Bankr. W.D. Tenn.

Landmark's intention is not to establish or maintain an ongoing business.  Instead, Landmark argues a rehabilitation, as the Bankruptcy Code contemplates, does not require the debtor to carry on a viable business operation.  Landmark asserts that its good faith purpose of maximizing the assets of the estate satisfies the rehabilitation test.

Landmark's assets (essentially the Preference Litigation and the Hess Farm Guaranty) are assertedly fully encumbered.  It is not expecting to receive any additional assets or funding.  Landmark's only feasible reorganization plan would be one of liquidation (though at current time Landmark has nothing to liquidate) and while the court is not prepared to state a *per se* rule that a liquidating corporation can never defeat a showing of cause under Section 1112(b)(4)(A), here the UST and Cohen have satisfied the court that Landmark has no likelihood of rehabilitation.[21] Rehabilitation means to reestablish a business and Landmark has no business.  Even if Landmark is successful in its Preference Litigation and ultimately receives the proceeds from the sale of the Property, all of the proceeds allegedly are owed to Virginia

---

1992) (defining concept of "rehabilitation"); *In re Wright Air Lines, Inc.*, 51 B.R. 96, 99-100 (Bankr. N.D. Ohio 1985); *In re Imperial Heights Apartments, Ltd.*, 18 B.R. 858, 863-64 (Bankr. S.D. Ohio 1982) (no "reasonable likelihood of rehabilitation" where debtor's only asset was a potential lawsuit).

[21] *See Loop Corp. v. United States Trustee*, 379 F.3d 511 (8th Cir. 2004).

Heritage Bank.[22]

The court finds that the sole purpose of the bankruptcy filing is to reduce Herrick's liability under his guaranty to Virginia Heritage Bank by creating an opportunity to attempt to undo the Subordination Order by creating a bankruptcy estate for Landmark and enabling a preference action. This collateral attack is merely an attempt to escape the consequences of the Subordination Order which found Landmark's claim should be subordinated to other creditors in the Hess Farm case.[23] The court determines that this

---

[22] Landmark disputes the UST and Cohen's presumption that Virginia Heritage Bank will receive all funds recovered in the Preference Litigation. Landmark instead argues that Virginia Heritage will share any recovery that comes as a result of the Preference Litigation with other administrative and unsecured creditors. This appears inconsistent with the fact stipulated to by the parties to these Motions, that the Hess Farm Purchase Note has been pledged to Virginia Heritage Bank. No avoidance action against Virginia Heritage Bank as to such pledge has been filed by Landmark as debtor in possession.

Landmark included in its Schedules that Virginia Heritage Bank holds a lien in the assignment of the deed of trust and Hess Farm Purchase Note and the Preference Litigation as to that note and deed of trust (i.e., the proceeds of sale of the Property). Furthermore even if the Bank's lien were avoidable, any recovery by Landmark of the proceeds of the Property would still inure to the same beneficiary- Herrick. As the overwhelming largest unsecured creditor, Virginia Heritage Bank would receive most of any recovery and Herrick and his entities would receive the remaining amount. Herrick would remain liable on his guaranty to Virginia Heritage Bank for the remaining balance of the Landmark debt to Virginia Heritage Bank.

[23] It is far from certain that if Landmark were to succeed in its Preference Litigation, such success would entitle Landmark to recover the proceeds of the sale of the Property. The final order entered in the Hess Farm proceeding subordinated the rights of Landmark and transferred the deed of trust lien to the Hess Farm estate under Section 510(c)(2). It is not determined that avoiding the transfer would affect the subordination of right to distribution.

is not a valid rehabilitation of an entity.  As the UST argues,
where the purpose of the preference statute is not furthered and
the case is being maintained for the mere benefit of an insider
(Herrick), there can be no finding of an imminent rehabilitation in
light of the worsening insolvency.

### B. Failure to Act as a Fiduciary to Creditors

Although not included in the enumerated list in Section
1112(b)(4), the UST urges the court to find Landmark's failure to
act as a fiduciary to its creditors as cause for dismissal or
conversion.  Citing *Commodities Futures Trading Comm'n v.
Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 1994 (1985), the UST
notes that Landmark owes a fiduciary duty to its creditors and has
failed to satisfy that obligation in favor of his own best
interests.

The court agrees with the UST.  Landmark is an entity
controlled by Herrick and as found earlier in this opinion, the
purpose of this bankruptcy case was for Herrick to avail himself of
the preference laws which exist only in bankruptcy.  Herrick's
effort to avoid a ruling made by this court after extensive
litigation in a separate case is, in effect, an effort to backstop
Herrick's efforts to reverse the Subordination Order by the pending
appeal in the Hess Farm adversary proceeding.  Herrick seeks to
delay or reduce payment of his guaranty to Virginia Heritage Bank
and it is unlikely that he will pursue the estate's asset (his

16

guaranty) in order to repay the creditors of the estate.

### C. 11 U.S.C. § 1112(b)(4)(F)

The UST further argues that cause for dismissal or conversion exists pursuant to Section 1112(b)(4)(F) which recites the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." The UST alleges that Landmark has failed to timely file its monthly operating reports as required by Sections 704(8), 1106(a)(1), 1107(a) and Federal Rule of Bankruptcy Procedure 2015. The UST further states that the monthly operating reports that Landmark has filed contain deficiencies.

The non-filing of required reports must be "unexcused," therefore indicating that the court has discretion to determine whether the debtor's failure rises to the level of cause. Herein, the UST has demonstrated that Landmark's shirking of its duties as debtor has created cause for dismissal under this subsection. The court notes that two days prior to the hearing upon the instant Motions, Landmark filed catch-up monthly operating reports for October, November and December of 2010. Such filing does not satisfactorily explain or excuse Landmark's failure to satisfy its duties as a chapter 11 debtor.

### D. 11 U.S.C. § 1112(b)(2)

Under the technical amendments made December 22, 2010, the

defense of showing that conversion or dismissal is not in the best
interests of the creditors and the estate is available only to the
extent expressed in revised Section 1112(b)(2).  All of the
elements set forth in Section 1112(b)(2) must be established.  One
of those elements is that the established cause for dismissal or
conversion be other than that expressed in Section 1112(b)(4)(A)
substantial or continuing losses to or diminution of the estate and
the absence of a reasonable likelihood of rehabilitation.
Accordingly, such defense is inapplicable here where cause is
demonstrated pursuant to Section 1112(b)(4)(A), but would have been
applicable to cause demonstrated by other facts, should the Movants
have been unsuccessful as to the Section 1112(b)(4)(A) argument.
Landmark has not attempted to make such a showing and instead
relies only on its argument that cause has not been demonstrated.

### E.  Dismissal based on Bad Faith

Although the court has found that cause exists for dismissal
under Section 1112(b)(4) and that Landmark has presented no
evidence which would lead the court to find that dismissal would
not be in the best interest of creditors and the estate, Cohen also
argues that dismissal of the case is warranted for bad faith as
described in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989).

In *Carolin Corp*, the United States Court of Appeals for the
Fourth Circuit affirmed a bankruptcy court's dismissal of a
voluntary chapter 11 bankruptcy petition at the outset the case on

the grounds that the case was not commenced in good faith. The
Court held that a movant must demonstrate both an objective
futility to the asserted attempt to reorganize and a subjective
showing of bad faith as to the intent of the debtor.  *Id. at 700*.
Whether the same standard applies to a motion to convert the case
to Chapter 7 at such a later point in the case is uncertain.  As
discussed in Collier,

> The requirement of objectivity [sic] futility as a
> prerequisite to dismissal for subjective bad faith may be
> criticized as imposing a too stringent ground for relief.
> Absence of a reasonable likelihood of rehabilitation and
> substantial or continuing losses, as well as failure to
> confirm a plan within a time fixed by statute or order,
> and material default or failure to substantially
> consummate a confirmed plan are enumerated causes for
> dismissal or conversion to chapter 7 without the
> necessity of proving subjective bad faith.  The effect of
> adding to the good faith doctrine the element of
> objective futility that is already covered by section
> 1112(b) may effectively negate bad faith filing as a
> basis for dismissal or conversion of the case.  However,
> even if objective futility is required by the Fourth
> Circuit for dismissal of a case at the threshold of its
> filing, the presence of bad faith conduct may add
> substantial weight to the movant's motion for dismissal
> for other cause.  Without requiring proof of objectivity
> [sic] futility, bad faith is a basis to appoint a trustee
> and divest the debtor that is misusing the system from
> control of the estate.

Collier*, supra, at* ¶ 1112.07[6][a].

As to objective futility, the Court stated the analysis should
concentrate on determining whether, "'there is no going concern to
preserve . . . and . . . no hope of rehabilitation, except
according to the debtors' terminal euphoria.'" *Id.* at 701-02
(quoting *In re Little Creek Development Co.*, 779 F.2d. 1068, 1073
(5th Cir. 1986)).   As to subjective lack of good faith, the

19

"inquiry is designed to ensure that the petitioner actually intends 'to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business'" *Carolin Corp.*, 886 F.2d at 702 (quoting *In re Victory Construction Company*, 9 B.R. 549, 564 (Bankr. C.D. Cal. 1981)).  The examination of this question requires the court to consider the totality of circumstances.  *Id*. at 701.  "The overall aim of the twin-pronged inquiry must of course be to determine whether the purposes of the Code would be furthered by permitting the Chapter 11 petitioner to proceed past filing." *Id*.  In the recent decision in the case of *General Growth Properties, Inc.*, 409 B.R. 43 (Bankr. S.D.N.Y. 2009), the United States Bankruptcy Court of the Southern District of New York addressing a lender's motion to dismiss the Chapter 11 case on the basis of bad faith, applied the same two-prong test mandated by *Carolin Corp*.  While not attempting to enumerate all factors to be considered, the Court observed that evidence of bad faith could include:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no

employees.

*Id.* at 56 (quoting *C-TC 9th Ave. P'ship. v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1311 (2d Cir. 1997)).

In the Landmark case, the court has determined that there are continuing losses and that there is no reorganization or rehabilitation in effect that would inure to the benefit of any non-insiders.  The only real creditor is Herrick who is controlling the debtor.  Virginia Heritage Bank can seek repayment of its Virginia Heritage Note from Herrick thru the guaranty.  The totality of circumstances in this case may be found to satisfy a separate cause for dismissal on the basis of bad faith.  Certainly the facts do not weaken the finding of other causes for dismissal under Section 1112(b)(4) as discussed above.

Nonetheless, the record in this matter substantiates, and indeed requires, dismissal of the case for cause pursuant to Section 1112(b)(4).  Because cause is found under expressed Sections of Section 1112(b)(4), the court does not find it necessary to determine that the case should or should not also be dismissed on the separate ground of bad faith.


**IV Conclusion**

The court has found that Movants have satisfied their burden of showing cause for dismissal or conversion of the case and that Landmark has failed to provide any persuasive evidence to the contrary.  Cohen has requested that the court dismiss the case and

the UST has requested that the court either dismiss or convert the case, but has urged dismissal as the logical solution.  As described in Collier, in general where the moving parties agree on the best outcome, the court should grant such requested relief. Collier, *supra*, at ¶ 1112.04[7].  Nevertheless, there are several factors which the court should consider in determining whether dismissal or conversion is the proper outcome upon a showing of cause.

> 1.  Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.
> 2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.
> 3. Whether the debtor would simply file a further case upon dismissal.
> 4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.
> 5. In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.
> 6. Whether any remaining issues would be better resolved outside the bankruptcy forum.
> 7. Whether the estate consists of a "single asset."
> 8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.
> 9. Whether a plan has been confirmed and whether any property remains in the estate to be administered.
> 10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Id.*

After careful consideration, the court finds that the Landmark case should be dismissed and that continuation of the case in a chapter 7 is not in the best interests of the creditors or the estate.

An Order conforming with this Decision will be entered.


cc:  Debtor
     Debtor's Counsel
     U.S. Trustee
     All Creditors and Parties-In-Interest

**End of Decision**